# UNITED STATES DISTRICT COURT
for the
Western District of Texas

FILED
19 NOV -8 PM 1:48
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
DEPUTY CLERK

United States of America
v.
David Randle Jakobeit
Amy Rachel Weber
*Defendant(s)*

Case No. A19 M 711

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of __November 8, 2019__ in the county of __Travis__ in the __Western__ District of __Texas__, the defendant(s) violated:

| Code Section | Offense Description |

**Count 1: Title 21 U.S.C. § 841 (a) (1)   Possession with Intent to Distribute Methamphetamine**

This criminal complaint is based on these facts:

On November 8, 2019, the above defendant did intentionally and knowingly possess methamphetamine with intent to deliver.

See attached affidavit

☒ Continued on the attached sheet.

_____
*Complainant's signature*

Lucas Friesenhahn, Detective, Austin Police Dept.
*Printed name and title*

Sworn to before me and signed in my presence.

Date: **11-8-2019**

_____
*Judge's signature*

City and state: **Austin, Texas**

Mark Lane
United States Magistrate Judge
*Printed name and title*

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

FILED
NOV - 8 2019
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
DEPUTY CLERK

CRIMINAL NO. A19 M 711

THE UNITED STATES OF AMERICA §
§
§
§
v. §
§
Amy Rachel Weber, §
David Randle Jakobeit, §
§
§
    *Defendants.* §

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Lucas Friesenhahn, being duly sworn, depose and state as follows:

### INTRODUCTION

1. I am a Detective with the Austin Police Department, Austin, Texas ("APD"). I am a sworn Texas peace officer and have been employed by APD since 2008. While employed by APD, I have investigated violations of state and federal criminal law. I have participated in the execution of search warrants for firearms, narcotics, and other evidence relating to the possession and distribution of controlled substances.

2. This affidavit is submitted in support of an application for the issuance of a Criminal Complaint against AMY RACHEL WEBER, born September 20, 1970, and DAVID RANDLE JAKOBEIT, born September 8, 1969 for violating: 21 U.S.C. § 841 (a) (1) Possession with Intent to Distribute Methamphetamine;

3. The statements contained in this Affidavit are based on information provided to me by other APD personnel and through my personal participation in the investigation of WEBER and JAKOBEIT. Because this Affidavit is being submitted for the limited purpose of establishing

probable cause for the issuance of the Criminal Complaint that is sought, it does not contain every fact known to me or other law enforcement officials.

## FACTUAL SUMMARY

4. During the month of May 2019, Officer Paige received information from a Confidential Informant (hereafter referred to as CI), that a subject named "Stretch" was distributing large quantities of methamphetamines in Austin. CI has knowledge that narcotics dealing activity has been occurring regularly by Stretch over the past several months, and has continued to occur through the month of October. This confidential informant is a "paid informant" who is financially compensated for information which leads to the arrest and/or seizure of narcotics and firearms. Based on the information and description provided by the CI, Officer Paige believed "Stretch" could possibly be David Randle Jakobeit. Officer Paige showed a prior arrest/booking photo of David Randle Jakobeit (DOB 09/08/1969) to the CI. CI positively identified the photo of David Randle Jakobeit as the methamphetamine dealer they know as "Stretch". CI informed Officer Paige that David Jakobeit was currently living at 8608 Loralinda Drive, Austin, Travis County, Texas.

5. CI has provided specific, detailed, and accurate information during the course of this investigation as well as prior narcotics investigations. CI has previously provided information during at least four previous cases that have led to felony arrests and the seizure of narcotics and firearms. Therefore, I believe the CI is reliable and credible. I am requesting the identity of CI used in this investigation to remain confidential because disclosure of CI's identity would endanger CI's safety and well-being.

6. Officer Paige conducted research on the residence and found involvement for the following people at 8608 Loralinda Dr: David Randle Jakobeit w/m 9-8-1969; Amy Weber w/f 6-20-1973; Lindsey Turner w/f 5-22-1995.

7. In the month of September, 2019, a Cooperating Defendant was interviewed by Detective Lutey #5654 who is a member of the Austin Police Narcotics Unit. The Cooperating Defendant provided information that "Stretch" was distributing large quantities of methamphetamines in Austin area. The Cooperating Defendant said that Stretch was receiving 9 to 18 ounces of methamphetamine at a time from their supplier, Stretch would resupply two to three times a week. The Cooperating Defendant said that they have observed David with at least two firearms. The Cooperating Defendant said that Stretch lived at an apartment complex on Grand Avenue Parkway. Detective Lutey, following up on the information that he received from the Cooperating Defendant, conducted surveillance at the apartments on Grand Avenue Parkway and took photos of the subject he believed to be "Stretch". While on surveillance, Detective Lutey observed "Stretch" engaging in suspected narcotics activity. Detective Lutey showed his surveillance photos to Officer Paige who positively identified the subject from the photos taken during surveillance as David Jakobeit. The Cooperating Defendant provided information about David for consideration in a plea agreement for pending federal narcotics charges. As Detective Lutey continued surveillance on David, he believed that David moved out of the Grand Avenue Parkway apartment in the last month.

8. In the month of October, 2019, a second Cooperating Defendant provided information that "Randy/Stretch" was distributing large quantities of methamphetamines in the Austin area. Cooperating Defendant also knew that "Randy" goes by the nickname "Stretch". Officer

Paige showed the Cooperating Defendant a photo of David Randle Jakobeit, the Cooperating Defendant positively identified the photo of David Randle Jakobeit as "Randy". The Cooperating Defendant said David was receiving 18 ounces of methamphetamine at a time from his supplier, David would resupply at least two times a week. The Cooperating Defendant said David lived at an apartment complex on Grand Avenue Parkway and David sold methamphetamine from his apartment. The Cooperating Defendant said David has two pit bulls. The Cooperating Defendant provided information about David for consideration in a plea agreement for pending federal narcotics charges.

9. Throughout the month of October, 2019, and into November, 2019, Officer's Paige, Duck and Pittman conducted surveillance at 8608 Loralinda Drive at various times of the day. Officers on surveillance observed David Jakobeit exit the residence door, described as, a metal storm door located on the garage conversion side, with a white female. David Jakobeit was observed entering a 1997 White Ford F150 TXLP "LYP6660" that was parked in the driveway of 8608 Loralinda Drive. Officers observed David Jakobeit drive the vehicle away from the residence. Several unidentified persons have been seen entering, exiting and loitering on the property of 8608 Loralinda Drive while Officers have been conducting surveillance

10. Furthermore, within the last two weeks, Officer Paige coordinated a controlled buy of methamphetamine from 8608 Loralinda Drive utilizing a CI. CI coordinated a purchase of narcotics with JAKOBEIT. Officer Paige met with, and searched, the CI for money and contraband prior to this controlled buy with no findings. The CI was provided a quantity of buy money for the purchase of methamphetamine. Officers Duck, Pittman and Paige, kept continuous surveillance of the CI to 8608 Loralinda Drive. Officer Paige and Officer Duck

maintained visual surveillance of the CI as they arrived at 8608 Loralinda Drive. CI was supplied a quantity of an opaque crystalline substance by WEBER. Officer Pittman observed the CI enter 8608 Loralinda Drive making entry through the door at the front of the residence which is described as the metal storm door located on the garage conversion side.

11. A short time later, Officer Pittman observed CI exit 8608 Loralinda Drive. CI departed 8608 Loralinda Drive and traveled to meet with Officer Paige at the pre-determined location. Constant visual surveillance of CI by Officer Duck, Pittman, and Paige, showed CI made no stops or contacts in between. CI provided Officer Paige with a quantity of an opaque, crystalline substance that CI stated they had purchased directly from a subject while inside of 8608 Loralinda Drive. Upon seizing this substance, Officer Paige suspected the substance to be methamphetamine. CI was searched again for money and contraband with no other findings. Officer Paige has been trained in the identification of suspected narcotics. Officer Paige tested a sample of the opaque, crystalline substance and the substance tested positive for methamphetamine.

12. Based on the aforementioned history of multiple prior arrests involving narcotics, the successful controlled buy, information provided by cooperating defendants and CI, surveillance, Affiant believes David Jakobeit had established a continuous pattern of narcotics possession and distribution.

13. On November 5, 2019 a search warrant was signed in District Magistrate Court by Honorable Judge Grizzard. On November 8, 2019 the search warrant was executed. During the search of the residence the following items were located in the garage conversion were JAKOBEIT and WEBER were residing:

A. Officer Paige located various containers of an opaque, crystalline substance inside an unlocked safe. The substance was later field tested and weighed. The total weight of the opaque crystalline substance located in the safe was approximately 358 grams.

B. Officer D. Perez located a large bag of an opaque, crystalline substance to the left of the safe inside the desk drawer. On top of the desk was a wallet containing JAKOBEITS identification card. The opaque, crystalline substance was later field tested and weighed. The total weight of the opaque, crystalline substance was approximately 691.1 grams.

C. Detective Fickel located an opaque, crystalline substance on the table to the right of the entrance door which was in plain view. The opaque, crystalline substance was later field tested and weighed. The total weight of the opaque, crystalline substance was approximately 16.4 grams.

D. Officer Duck located a tool box near the desk which contained a baggie of an opaque, crystalline substance. The opaque, crystalline substance was later field tested and weighed. The total weight of the opaque, crystalline substance was approximately 11 grams.

E. Officer Duck located a small baggie under the bed where JAKOBEIT and WEBER were laying which contained an opaque, crystalline substance. The opaque, crystalline substance was later field tested and weighed. The total weight of the opaque, crystalline substance was approximately 1.4 grams.

F. Officer Duck located a clear plastic bag in the truck, which is in care custody, custody and control of JAKOBEIT which contained an opaque, crystalline substance. The

opaque, crystalline substance was later field tested and weighed. The total weight of the opaque, crystalline substance was approximately 29 grams.

G. Officer Paige located US currency on top of the table and in the safe that totaled approximately $ 3,000 dollars.

H. The combined weight of the methamphetamine was approximately 1114.6 grams.

### Interview

Prior interviewing WEBER she made a res gestae statement to a supervisor onscene that all the drugs were hers and that she was going to need a lawyer. When I read WEBER her Miranda rights she immediately requested a lawyer. I then interviewed JAKOBEIT and he said he had knowledge of the drugs in the house and he has made pick-ups and deliveries for WEBER but he is unaware of the amounts of methamphetamine she is selling. JAKOBEIT advised he has been dating WEBER and living together for over two years.

14. I believe JAKOBEIT and WEBER is a drug trafficker based on the following: Information provided by the Confidential informant, A successful controlled buy by the confidential informant, and the large quantity of drugs located during the search. I know from training and experience during past narcotics investigations that persons coming and going from a home is a sign of drug dealing. In my experience, this amount (1100 grams-methamphetamine) is far greater than any personal use quantity.

### CONCLUSION

15. Based on the foregoing, there is probable cause to believe that AMY RACHEL WEBER and DAVID RANDLE JAKOBEIT has committed the offense set forth in the attached Criminal Complaint.

16. I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

_____
LUCAS FRIESENHAHN
Detective
Austin Police Department
Austin, Texas

Subscribed and sworn to before me at Austin, Texas, on this __8__ day of NOVEMBER 2019.

_____
UNITED STATES MAGISTRATE JUDGE

Mark Lane
United States Magistrate Judge